UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS BROWN,

                    Petitioner,                    **DECISION AND ORDER**
                                                                            No. 02-CV-0235

      -vs-

GOUVERNEUR CORRECTIONAL FACILITY,
Department of Correctional Services,

                    Respondent.
_____

## INTRODUCTION

Petitioner, Dennis Brown ("Brown"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Monroe County) on charges of grand larceny, petit larceny, and engaging in a scheme to defraud. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By indictment #731/97, a Monroe County grand jury charged Brown charged with two counts of third degree grand larceny, two counts of fourth degree grand larceny, and four counts of petit larceny. The ninth count of the indictment charged Brown with a scheme to defraud in the first degree. Each of the larceny counts alleged a separate act of stealing from a different complainant. This indictment was the culmination of a 1997 investigation into Brown's business practices undertaken jointly by the Rochester Police Department and the New York State Police. Apparently, a number of individuals had contacted the authorities to complain about Brown, who

had been representing himself to individuals as a licensed mortgage broker.

At Brown's jury trial held before Justice Mark in New York State Supreme Court (Monroe County), the prosecution elected to prove the larceny charges under a theory of stealing by false pretenses. In part this was accomplished by introducing proof that Brown affirmatively told some of these individuals that he was a licensed mortgage broker (T.285, 351, 532, 583, 681);[1] he also held himself out as doing business under the d/b/a of "Chris Jaminson & Company" (T.662) and placed advertisements in the phonebook promoting his services as a licensed mortgage broker (T.406, 433-35, 560, 581). However, the New York State Banking Department had no record of Brown being licensed as a mortgage broker. Brown's victims testified that he would promise them that he could assist them in stopping foreclosure proceedings (T.282, 433, 560, 582-83) or obtaining loans (T.3176, 384, 532). The client would then provide an initial payment as a retainer to secure Brown's services. In either situation, the most that any victim received for his or her money was a telephone call requesting that the foreclosure be discontinued (T.264), a refund check drawn upon an account which previously had been closed (T.327, 388, 541, 543), or a refund check that was otherwise of no value (T.521). The victims would make additional payments after receiving reassurances from Brown that he was actively pursuing their interests, by allegedly stopping the foreclosure or obtaining the requested loan (T.415, 565, 583-84, 588, 599). Brown would be in frequent contact with his victims, asking them for more money to process necessary paperwork, but tellingly absent from these conversations with his clients was any request for relevant information or documentation regarding the client's finances or property (T.417, 448, 599).

---

[1] Citations to "T.__" refer to the trial transcript.

When Investigator Cerretto of the Rochester Police Department contacted Brown regarding the police investigation into Brown's business affairs and informed Brown that he was going to be arrested, Brown claimed that he was going to his attorney's office and would thereafter turn himself in (T.751-52). Brown then fled to Atlanta and had to be extradited to New York.

Brown did not testify in his behalf. He called one witness, Stephen Rogoff ("Rogoff"), a local attorney who testified that Brown had asked him to act as counsel to the lender in some real estate deals in which Brown was involved. However, they never finalized a retainer agreement and Rogoff never performed any closings for Brown. Rogoff testified that Brown had told him that he was going to be traveling out of state somewhere, but he could not remember if the destination was Atlanta or whether Brown ever called to ask him advice about whether or not he should go. When asked whether Brown had mentioned something about an investigation pending with him, Rogoff stated that Brown told him "he [Brown] might be on a television program like an Al White type thing, who was investigating real estate matters, that type of an investigation." *See* T.774-78.

The jury returned a verdict convicting Brown of all counts in the indictment. Prior to sentencing, assigned counsel Alexander R. Renzi, Esq. ("Renzi"), moved on December 10, 1998, for permission to withdraw as Brown's counsel.  Renzi noted on the record that Brown had filed a grievance against him for allegedly failing to provide effective assistance of counsel. In addition, Brown had made accusations concerning Renzi during a mental health examination ordered *sua sponte* by the court prior to trial.  Renzi told the court that under these circumstances he did not feel that it would be proper to continue representing Brown. The court granted

counsel's motion and assigned Donald M. Thompson, Esq. ("Thompson"), as new counsel. At Thompson's request, the court ordered another mental competency evaluation. The outcome of the second competency hearing was the same as the first–that Brown was competent to stand trial.

On April 21, 1999, Brown appeared for sentencing. The prosecution indicated that if Brown was sentenced to a term of six to twelve years in state prison, it would not prosecute a pending fourth degree grand larceny charge. Defense counsel agreed with the imposition of that sentence and, accordingly, the court sentenced Brown as a second felony offender to an indeterminate term of incarceration of six to twelve years.

Represented by new counsel on direct appeal, Brown asserted the following arguments: (1) statements made by petitioner while he was represented by an attorney were admitted at trial in violation of his New York State constitutional right to counsel; (2) the verdicts for the third, fifth, sixth and ninth counts were against the weight of the evidence; (3) if the verdicts were reversed, the corresponding restitution orders also had to be vacated; and (4) the sentence was unduly severe. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on September 28, 2001. *People v. Brown*, 286 A.D.2d 960, 730 N.Y.S.2d 921 (App. Div. 4th Dept. 2001). The Court of Appeals denied leave to appeal on December 27, 2001. *People v. Brown*, 97 N.Y.2d 679, 738 N.Y.S.2d 294, 764 N.E.2d 398 (N.Y. 2001).

Thereafter, Brown filed a series of motions to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in the trial court. He also brought a petition for state habeas corpus. Respondent has indicated that it has not been able to obtain all of Brown's

motions to vacate, so the Court will rely on Justice Mark's recounting of the substance of petitioner's motions as set forth in his March 21, 2002 order. *See* Appendix W, attached to Respondent's Answer (Docket #8). According to Justice Mark, Brown raised claims of malicious prosecution; ineffective assistance of counsel based on counsel's alleged failure to address the malicious prosecution issue; that he was illegally sentenced as a second felony offender; that $15,000 allegedly collected from him at the time of booking was never returned to him; and that appellate counsel failed to cite certain cases in her brief on appeal to the Fourth Department. *See id.* All of Brown's applications, which Justice Mark described as "virtually indecipherable," were denied in written opinions. *See id.*

This federal habeas petition was filed on or about March 27, 2002. Brown's habeas petition is nearly impossible to understand. For his first ground for habeas relief, Brown states, "unlawful arrest evidence obtained by channel #8 news reporter, Brad Davidson." Petition at 7 (Docket #1). The Court interprets this to mean that Brown is challenging the legality of his arrest in Atlanta, Georgia and subsequent extradition to New York. In other words, Brown appears to be asserting a claim premised upon the Fourth Amendment right to be free from unreasonable searches and seizures.

As his second ground for relief, Brown writes, "self crimination [*sic*] by useing [*sic*] public media as tool to convict crimination [*sic*]." Petition at 8 (Docket #1). He appears to be complaining about the same newscast referenced in his first ground for habeas relief. The Court is wholly perplexed as to what Brown means by this. For its part, respondent has interpreted this as meaning that Brown is complaining that his conviction was somehow secured through self-incrimination via the television news reports broadcast on Channel 8 news. As Brown has not

submitted a memorandum of law expanding on this statement, and respondent's interpretation is not unreasonable, the Court will interpret the second ground for habeas relief as respondent has suggested.

For his third ground, Brown asserts that on December 8, 1999, defense attorney Alex Renzi "told the court he was ineffective assistance of counsel and by being ineffective assistance on the record, he stated he was ineffective assistance of counsel." Petition at 8 (Docket #1). The Court will interpret this as attempting to state an ineffective assistance of counsel claim. However, Brown provides no further elaboration as to the alleged bases for this claim

Finally, Brown complains that "the petit grand jury and trial jury wasn't [*sic*] impartial, the weight of the evidence witness testified in Rev. Donaldson that I never seen the defendant before in my life records prove this." Petition at 8 (Docket #1). "Rev. Donaldson" apparently refers to complainant Sarah Donaldson, who was involved in the third count of grand larceny charged in the indictment. Again, Brown provides no factual background for his claims. Interpreting Brown's pleadings liberally, as it must do, the Court reads this statement as alleging that there were irregularities in the grand jury proceeding; that there was a denial of Brown's Sixth Amendment right to an impartial jury; and that the jury verdict was against the weight of the evidence.

For the reasons set forth below, the petition is denied.

## DISCUSSION

### Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28

U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

In reviewing the record in this matter, the Court notes that nearly all of Brown's claims have not been presented to the state courts below. In fact, the only claim that arguably might be exhausted is Brown's weight-of-the-evidence claim. In the past, a state prisoner's federal habeas petition had to be dismissed if the petitioner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). However, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Respondent has raised the defense of non-exhaustion with regard to all of Brown's claims. *See* Respondent's Answer at 14 (Docket # ).

An exception to the exhaustion requirement set forth in *Rose v. Lundy*, *supra*, has been provided for by statute. Now, pursuant to the 1996 amendments to 28 U.S.C. § 2254, a district court may, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims.

*See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Section 2254(b)(2) allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." *Steele v. Walter*, 11 F. Supp.2d 252, 257 (W.D.N.Y. 1998) (quoting *Cowan v. Artuz*, 1996 WL 631726, at *5 (S.D.N.Y. 1996) (quoted in *Loving v. O'Keefe*, 960 F. Supp. 46, 49 (S.D.N.Y. 1997)).

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. *Naranjo v. Filion*, 2003 WL 1900867, at *8 (footnote omitted) (citing *Hammock v. Walker*, 2002 WL 31190945, at *2 (W.D.N.Y. Sept.17, 2002); *Cruz v. Artuz*, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002); *Pacheco v. Artuz*, 193 F. Supp.2d 756, 761 (S.D.N.Y. 2002); *Rowe v. New York*, 2002 WL 100633, at *5 (S.D.N.Y. Jan. 25, 2002); *Love v. Kuhlman*, 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001); *Shaw v. Miller*, 2001 WL 739241, at *2 n. 2 (E.D.N.Y. June 26, 2001); *Santana v. Artuz*, 2001 WL 474207, at *3-4 (S.D.N.Y. May 1, 2001)). A minority of courts in this Circuit have expressed the test as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." *Id.* (quoting *Hernandez v. Lord*, 2000 WL 1010975, at *4-5 & n. 8 (S.D.N.Y. July 21, 2000)) (internal quotations omitted) (analyzing the diverging views without deciding which standard is appropriate); *see also Padilla v. Keane*, 2000 WL 1774717, at *3 (S.D.N.Y. Dec. 4, 2000); *Orraca v. Walker*, 53 F. Supp.2d

605, 611 (S.D.N.Y. 1999); *Basnight v. Keane*, 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001) (articulating "nonmeritorious" standard rather than "patently frivolous," although claims failed either standard). The Second Circuit opted for the "patently frivolous" test in *Jones v. Senkowski*, 2001 WL 1230800, at *4 (2d Cir. Oct. 5, 2001), but that decision was later vacated and withdrawn. *Naranjo*, 2003 WL 1900867, at *8 n. 14 (citing *Jones v. Senkowski*, 2002 WL 246451 (2d Cir. May 22, 2002), *amended by Jones v. Senkowski*, 42 Fed. Appx. 485, 2002 WL 1032589 (2d Cir. May 22, 2002), *cert. denied*, 537 U.S. 1177 (2003)).

As discussed below, all of Brown's claims fail either the "patently frivolous" or "nonmeritorious" test. Thus, it is appropriate for the Court to rely upon 28 U.S.C. § 2254(b)(2) in order to deny the habeas petition in its entirety, notwithstanding Brown's failure to exhaust state remedies on most of his claims.

**Merits of the Petition**

**1.      Fourth Amendment Claim: Unlawful Arrest**

Brown's claim that his arrest was unlawful is not cognizable on habeas review; in general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). The Second Circuit has noted that *Stone* requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978) (emphasis added). A federal court may

undertake habeas review only in one of two instances: (1) "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." *Id.* at 840; *accord Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. *See* N.Y. Crim. Proc. Law § 710.10 *et seq.*; *see also Capellan*, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988) as being facially adequate"). Thus, Brown may not raise his Fourth Amendment claims on habeas review because he was provided with the opportunity to fully adjudicate these matters in state court. The case law makes clear that the fact that he chose not to avail himself of that opportunity is of no moment; his Fourth Amendment claims still are not cognizable on habeas review.

**2.      Conviction Obtained By Violation of Privilege Against Self-Incrimination.**

Brown states in his petition that the "media supported false issues to the public by useing [*sic*] the videos for self incrimination that was use [*sic*] to obtain a governor warrant of arrest." In this paragraph, Brown also has written a letter "e" with a circle around it. He presumably is referring to the list of possible grounds for habeas relief set forth on the petition form; "e" is "Conviction obtained by a violation of the privilege against self-incrimination." Thus, Brown

appears to be arguing that his Fifth Amendment privilege against self-incrimination was violated because, allegedly, "the public media [was used] as a tool to convict" him. This argument simply makes no sense. It is not clear to this Court what is the origin of the "Channel 8" newscast by "Brad Davidson" about which Brown so strenuously complains. However, it is clear that this alleged newscast had nothing whatsoever to do with Brown's trial; there were no videos introduced into evidence as far as this Court can tell. Habeas relief cannot issue on this patently frivolous and nonsensical claim.

3.      **Ineffective Assistance of Counsel**

Brown makes the somewhat remarkable allegation that on December 8, 1998, his trial counsel "told the court he was ineffective assistance of counsel [*sic*]." However, Brown provides no clue as to the aspects of trial counsel's representation that allegedly were deficient. The Court has reviewed the transcript from the proceedings held on December 8, 1998, and it is clear that trial counsel did not admit to failing to provide effective representation to Brown. Rather, trial counsel informed the court that he felt compelled to make a motion to withdraw as counsel because Brown had filed a "grievance against [him] for ineffective assistance of counsel."  In addition, counsel explained, Brown had made complaints about counsel to the person who performed a mental health evaluation of him. Counsel stated that under these circumstances, he did not think it was appropriate to continue representing Brown. The trial court agreed. Counsel was relieved of his assignment and the case was adjourned so as to allow assignment of a new attorney to represent Brown. *See* Transcript of December 8, 1998 Hearing.

A habeas petitioner cannot obtain a reversal of his conviction simply by stating that his counsel was ineffective; he must provide factual bases for his claim. *Strickland v. Washington*,

466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) (stating that a defendant raising "a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment"). This Brown has utterly failed to do. Habeas relief cannot issue on this patently frivolous claim.

4.     **Lack of Impartiality in the Grand Jury and Petit Jury**

Brown implies that the grand jury which indicted him and the petit jury which convicted him were somehow biased against him. To the extent Brown is asserting defects in the grand jury proceeding, such a claim is not cognizable on habeas review because Brown was convicted by a jury after a trial. The trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 68 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted"). With respect to the allegation that his trial jury was not impartial, most fatal to this claim is Brown's complete failure to provide any facts at all in support of his allegations of bias. This claim is patently frivolous and cannot serve as a basis for habeas relief.

5.     **Verdict on the Third Count of Larceny Was Against the Weight of the Evidence**

Brown takes issue with the testimony given by Reverend Sarah Donaldson ("Donaldson"), the complainant in the third count of the indictment (grand larceny by false


pretenses). He states that his conviction on this count was against the weight of the evidence. On direct appeal, the state court rejected this claim but also *sua sponte* treated it as an evidentiary insufficiency claim. The court found that the evidence was "legally sufficient to establish defendant's guilt of larceny and scheme to defraud." *People v. Brown*, 286 A.D.2d 960, 730 N.Y.S.2d at 922 (citations omitted).

A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a weight-of-the-evidence claim is purely a matter of state law, it is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

In keeping with the principle that complaints of *pro se* petitioners are to be considered liberally in their favor, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), some habeas courts have construed weight-of-the-evidence claims as insufficiency-of-the-evidence claims. *E.g.*, *Davis v. McLaughlin*, 122 F. Supp.2d 437, 441 (S.D.N.Y. 2000)

(treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim).

Even if the Court were to construe Brown's petition liberally as raising a claim that the evidence was legally insufficient to support the verdict, habeas relief still would not be warranted. A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). On habeas review, a court is not permitted to "'make its own subjective determination of guilt or innocence.'" *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402 (1993)). Accordingly, a habeas petitioner bears a "heavy burden" in challenging the sufficiency of the evidence supporting his conviction. *Id.*

Donaldson testified on direct examination that she wanted to obtain a loan to build a new church. Brown was recommended to her by one of his friends, whose name she could not remember. Donaldson met with Brown in July 1997. After viewing the property on which the church was to be built, Brown said that he would be able to get Donaldson a $50,000 mortgage on the property but that she needed to give him at least $5,000 for his services in securing the loan (T.386). Donaldson wanted to give Brown his fee at the closing, but Brown said that was not the way he did things. They agreed that Donaldson would give him $3,000 at the time and the remaining $2,000 when the loan closed (T.386). A few days later, Brown informed Donaldson that the loan had been approved, and that she just needed to go to her attorney's office to pick up the check. However, no check was ever delivered to Donaldson or her attorney. (T.385). When

Donaldson finally was able to get in touch with Brown, she demanded that her check be returned. He did return a check for $3,000 to Donaldson's attorney, but when she took it to the bank to cash it, the bank said that the account on which it was drawn was closed (T.388). On re-direct examination, Donaldson testified that Brown told her that he was a licensed mortgage broker (T.402).

To prove larceny under a theory of false pretenses, the prosecution was required to adduce evidence that petitioner "obtained title or possession of money or personal property of another by means of an intentional false statement concerning a material fact upon which the victim relied in parting with the property." *People v. Termotto*, 81 N.Y.2d 1008, 1009, 616 N.E.2d 496, 599 N.Y.S.2d 910 (N.Y. 1993) (quotation and citations omitted). Defense counsel objected to the court's jury instruction in relation to the charges of larceny by false pretenses; he believed that the instruction should have been based upon larceny by false promises and pointed out that the prosecutor argued both theories in her summation. The court noted defense counsel's exception. The prosecutor then announced that it was her understanding that under New York case law, "when two theories of the People's case can be brought, that the People have to elect and I did elect false pretenses rather than false promise." T.859.

On direct appeal, the district attorney noted that the prosecutor at Brown's trial erroneously assumed that an election between the two theories was necessary when, in fact, it was not. *See People v. Ponnapula*, 229 A.D.2d 257, 655 N.Y.S.2d 750, 759-60 (App. Div. 1st Dept. 1997) (holding that evidence that defendant, a corporate president, made false statements to bank in order to obtain loan for corporation to purchase parking lot, which corporation already owned, was sufficient to support grand larceny conviction on theory both larceny by false

promise and larceny by false pretenses) (citing *People v. Kaminsky*, 127 Misc.2d 497, 486 N.Y.S.2d 814, 822 (N.Y. Sup. Ct. 1985) ("The prosecutor is not compelled to adopt one theory of larceny to the exclusion of all others, but the evidence must suffice to establish larceny in some recognizable form.")).

Although a theory of larceny by false promises perhaps would have been more apt with respect to the count involving Donaldson, this Court cannot say that the evidence was insufficient to support a verdict against Brown on the charge of larceny by false pretenses. After hearing Donaldson's testimony and drawing all possible inferences in the prosecution's favor, a rational jury could have found that Brown's misrepresentation that he was a licensed mortgage broker induced the victim to give him money in order to have him secure a loan for her. Thus, Brown cannot clear the hurdle imposed by the stringent standards of constitutional sufficiency review, and habeas relief is not warranted.

## CONCLUSION

For the reasons stated above, Dennis Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Brown has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      January 12, 2006
            Rochester, New York.